IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>ANTONIO DÍAZ-LÓPEZ,<br><br>**Defendant** | CRIMINAL NO. 21-157 (RAM) |

## MEMORANDUM AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Antonio Díaz-López's ("Defendant") *Motion to Compel Discovery* ("*Motion*"). (Docket No. 23). Defendant asks the Court to order the United States of America (the "Government") to: (1) disclose certain Reports of Investigation ("ROIs") prepared by law enforcement; (2) investigate all its files and witnesses for Brady[1] and Giglio[2] material and disclose such material as soon as the Government learns of it; (3) disclose a list of all materials not previously disclosed with a summary of their contents; and (4) present any undisclosed materials *in camera* for the Court's review. Id. at 7. The Government filed an *Opposition* to the *Motion*, arguing Defendant is not entitled to the requested discovery materials, but agreeing

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] Giglio v. United States, 405 U.S. 150 (1972).

to disclose some of the requested information and documents. (Docket No. 30). The Government also provided ROIs #4 and #5 for this Court's *in camera* review. (Docket Nos. 30-1; 32-1). Defendant filed a *Reply*, and the Government thereafter filed a *Surreply*. (Docket Nos. 36; 39). For the reasons discussed below, the *Motion* is **GRANTED IN PART AND DENIED IN PART**.

## I. FACTUAL BACKGROUND

On May 5, 2021, Defendant was indicted for knowingly possessing a firearm and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1). According to the Government, on April 23, 2021, between 1:00 and 2:00 am, Defendant—who was a convicted felon serving a supervised-release term—drove a stolen Kia Soul to a house in San Juan, Puerto Rico and initiated a conversation with a male individual (the "Victim"). (Docket No. 30 at 1-2). Defendant later admitted he was sent to the Victim's house with instructions from other unidentified individuals to hurt the Victim. Id. at 2. After some time at the house, Defendant shot the Victim in the face and shoulder with a Glock pistol. Id. The Victim immediately tried to wrestle the pistol away from Defendant. Id. Police later found the two individuals on the ground struggling for possession of the firearm. Id. A search of the vehicle Defendant drove to the scene revealed three Glock magazines, multiple rounds of .40 caliber ammunition, and Defendant's Puerto Rico identification card. Id. at 2-3.

Both individuals were taken to the hospital and treated for injuries. Id. at 3. At the hospital, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents interviewed Defendant. Id. Additionally, probation officer Joselyn Pérez-García ("Pérez-García") interviewed Defendant there. Id. Defendant made incriminating statements during both interviews. Id.

## II.  ANALYSIS

### A. ROI # 4

Defendant first contends the Government must disclose ROI #4 because it contains Brady material. (Docket No. 23 at 2-3). Brady requires the Government "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." United States v. Prochilo, 629 F.3d 264, 268 (1st Cir. 2011) (citing, *inter alia*, Brady, 373 U.S. at 87). "Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." Id. (citations omitted). Where a claim of Brady error is advanced, "the defendant bears the burden of showing a likelihood of prejudice stemming from the government's nondisclosure." United States v. Simon, 12 F.4th 1, 51 (1st Cir. 2021) (internal quotation marks and citation omitted). The defendant must "articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the

materials contain this evidence, and, finally, why this evidence would be both favorable to him and material." Id. (quoting Prochilo, 629 F.3d at 269).

In the *Motion*, Defendant states that ROI #4 "presumably collects the interview of one eyewitness" which "would be the only evidence linking [Defendant] to the possession of the firearm found on the scene." (Docket No. 23 at 3). Relying on Smith v. Cain, 565 U.S. 73 (2012), Defendant contends that "an eyewitness' statements to police are subject to mandatory disclosure under Brady where the witness's statements are the only evidence linking the defendant to the crime." (Docket No. 23 at 2). Therefore, according to Defendant, the eyewitness's statements in ROI #4 must be disclosed. The Government contests Defendant's reading of Smith and posits that the withheld witness statements in Smith were only deemed Brady material because they conflicted with the witness's testimony and thus were favorable to the accused. (Docket No. 30 at 5). The Government provided the Court with a copy of ROI #4 to conduct an *in camera* review. (Docket No. 32-1).

As an initial matter, the Court is not persuaded by Defendant's expansive reading of Smith. (*See* Docket No. 23 at 2). In Smith, the Supreme Court held that evidence was material under Brady when the testimony that would have been impeached was the only evidence linking the defendant to the crime and the withheld statements directly contradicted the witness's testimony. 563 U.S.

at 76. Nowhere does Smith establish a blanket rule that mandates disclosure of evidence whenever the Government plans to present the testimony of only one eyewitness.

Further, after reviewing ROI #4 *in camera*, the Court finds the document does not contain any Brady material.[3] The statements provided are not exculpatory, they are entirely *inculpatory*. And, unlike in Smith, there is no reason to currently believe that the witness statements in ROI #4 will conflict with any witness testimony at trial. Further, the Government stated that it "is not aware of any benefits received by witnesses in exchange for making statements to authorities." (Docket No. 39 at 4). To order the Government to turn this document over at this time would improperly expand Brady and eviscerate the Jencks Act in many scenarios. *See* Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one."); United States v. Grandmont, 680 F.2d 867, 874 (1st Cir. 1982) ("A court may not compel the disclosure of statements of Government witnesses before the conclusion of their direct testimony.").

Therefore, for the above-stated reasons, Defendant's request for the disclosure of ROI #4 is **DENIED**.

---

[3] Because ROI #4 does not contain Brady material, the Court will not order the Government to disclose such material "as soon as [the Government] learn[s] of it." (*See* Docket No. 23 at 6).

**B. ROI # 5**

Next, Defendant requests an unredacted copy of ROI #5, which the Government also provided to the Court for an *in camera* review. (Docket Nos. 23 at 3-5; 30-1). ROI #5 documents a non-custodial interview of Defendant conducted by ATF agents. (Docket No. 30-1). Defendant contends the Government redacting the victim's name from ROI #5 violates Fed. R. Crim. P. 16(a). (Docket No. 23 at 3).

Fed. R. Crim. P. 16(a)(1)(A) requires the government to disclose to the defendant, upon a defendant's request, "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). Additionally, Fed. R. Crim. P. 16(a)(1)(B) requires the government to disclose to the defendant, and make available for inspection, copying, or photographing, upon a defendant's request, certain written or recorded statements made by the defendant. *See* Fed. R. Crim. P. 16(a)(1)(B).

Here, the Government complied with its obligations under Fed. R. Crim. P. 16(a)(1)(A) and (B). The only text redacted from ROI #5 is the victim's name, which was not provided by Defendant himself. (Docket No. 30 at 7). Defendant has not identified any authority that would require the disclosure of information not provided by Defendant pursuant to Fed. R. Crim. P. 16(a)(1)(A) or

(B). Defendant's request for an unredacted copy of ROI #5 is **DENIED**.

Defendant also requests documents explaining the context of the ATF agents' interrogation of Defendant wherein he provided the statements in ROI #5. (Docket No. 23 at 4-5). However, the Government informed the Court that on January 18, 2022, about a month after Defendant filed the *Motion*, the Government sent the ATF agents' rough notes from the interview to Defendant via email. (Docket No. 30 at 8-9). Without ruling on whether the Government had an obligation to do so, the Court is satisfied with those disclosures at this time and believes Defendant has sufficient materials to put the ATF interview in context.

### C. Production of Giglio Material

Defendant next asks for an order compelling the Government to search for and produce pertinent Brady and Giglio material from the personnel files of state, federal, and probation offices who were involved in the arrest and investigation at issue in this case. (Docket No. 23 at 5). In particular, Defendant requests pertinent documents from the U.S. Probation Office and the Puerto Rico Police Bureau ("PRPB").

The Government's disclosure obligations under Brady extend to evidence that the defense could use to impeach the prosecution's key witnesses. United States v. Raymundi-Hernandez, 984 F.3d 127, 159 (1st Cir. 2020) (citing, *inter alia*, Giglio, 405 U.S. at 154).

This duty "exists regardless of whether the defendant requests favorable evidence from the Government." Id. (citing Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)). However, the scope of the duty is limited. Prosecutors need only disclose Giglio material that is in the Government's possession and "learn of any favorable evidence known to the others acting on the government's behalf in the case[.]" Kyles, 514 U.S. at 437. Courts find this element of Brady and Giglio to be "coextensive with the possession, custody, or control element of Rule 16" of the Federal Rules of Criminal Procedure. United States v. Ellison, 527 F. Supp. 3d 161, 165-66 (D.P.R. 2021) (citation omitted).

Documents and other materials held by federal and state government entities are subject to such disclosure "if the entity is closely connected to the prosecutor." Id. at 166 (internal quotation marks and citation omitted). "Whether a state or another federal agency may be considered part of a federal prosecution team depends upon the level of involvement between the United States Attorney's Office and the state or agency which holds the alleged Brady material." United States v. Ramos-Cartagena, 9 F. Supp. 2d 88, 91 (D.P.R. 1998) (citation omitted). Courts consider a number of factors in determining whether a joint investigation existed, including:

> (1) whether one agency acts on behalf of or under the control of another; (2) the extent to which the two agencies are working as a

> team and are sharing resources; and (3) whether the agency charged with possession of evidence in the other agency's files had ready access to it.

Ellison, 527 F. Supp. 3d at 166 (citation omitted). Additionally, the Justice Manual provides federal prosecutors with the following list of factors to consider in determining whether to review potentially discoverable information from another federal agency:

> (1) whether the prosecutor and the agency conducted a joint investigation or shared resources related to investigating the case; (2) whether the agency played an active role in the prosecution, including conducting arrests or searches, interviewing witnesses, developing prosecutorial strategy, participating in targeting discussions, or otherwise acting as part of the prosecution team; (3) whether the prosecutor knows of and has access to discoverable information held by the agency; (4) whether the prosecutor has obtained other information and/or evidence from the agency; (5) the degree to which information gathered by the prosecutor has been shared with the agency; (6) whether a member of an agency has been made a Special Assistant United States Attorney; (7) the degree to which decisions have been made jointly regarding civil, criminal, or administrative charges; and (8) the degree to which the interests of the parties in parallel proceedings diverge such that information gathered by one party is not relevant to the other party.

Justice Manual § 9-5.002.

Alternatively, courts have found that the government has possession, custody, or control over documents pursuant to a specific agreement. Ellison, 527 F. Supp. 3d at 166 (citing United

States v. Stein, 488 F. Supp. 2d 350, 362 (S.D.N.Y. 2007)).

    1. U.S. Probation Office Documents

Here, Defendant first asks the Government to search through the personnel files of the U.S. Probation Office and to produce pertinent Brady and Giglio information found in said files. (Docket Nos. 23 at 5; 36 at 6-7). The Government takes issue with Defendant asking it to "rummage through the files of the U.S. Probation Office in search of evidence favorable to the defense[.]" (Docket No. 30 at 9). The Government cites ample authority supporting the proposition that, generally speaking, probation officers are not part of the prosecution team. See id. at 10-11. The Government also contends that it would need a Court order to gain access to U.S. Probation Office files. Id. at 11.

The Court agrees that, generally, the U.S. Probation Office acts as a neutral arm of the Court and not as a member of any prosecution team. See, e.g., United States v. Rivera-Rodriguez, 617 F.3d 581, 595 (1st Cir. 2010). However, in the case at bar, Pérez-García was investigating Defendant's alleged violations of his supervised-release conditions arising from the *exact incident* underlying this prosecution. See Criminal Case No. 14-224. As part of that investigation, Pérez-García interviewed Defendant on the same day as ATF agents. (Docket No. 30 at 3). Therefore, to the extent the Government and the U.S. Probation Office were simultaneously investigating the same potentially unlawful

conduct, relevant U.S. Probation Office files are within the possession of the Government for Brady purposes. **As such, the U.S. Probation Office is ORDERED to turn over to the Government all documents created on or after April 23, 2021 that were used to prepare the Informative Motion at Docket No. 52 in Criminal Case No. 14-224. And the Government is ordered to search these documents for Brady and Giglio material**. However, the U.S. Probation Office need not turn over, and the Government need not review, any documents in Defendant's U.S. Probation Office files outside of those identified in the preceding sentence.

   2. PRPB Documents

Defendant also requests the Court order the Government to obtain Brady and Giglio material from the PRPB. (Docket Nos. 23 at 5-6; 36 at 6). The Government again asks the Court not to order it to "rummage through files" maintained by another government entity. (Docket No. 30 at 14-15). Specifically, the Government contends the PRPB is not part of the prosecution team because: (1) this case does not involve a joint investigation between ATF and the local PRPB; (2) local authorities did not participate in the process of deciding whether to file charges; (3) the Government has not shared evidence gathered in this case with the PRPB; and (4) the Government does not have "ready access" to PRPB files. Id. at 13-14.

As noted above, it is well established that prosecutors do

not have a duty to disclose information maintained by government agents that are not working with the prosecution. *See* Rivera-Rodriguez, 617 F.3d at 595. While "Brady undeniably extends to members of the prosecuting team, including police investigators working for the prosecution," it is often unclear "[w]ho qualifies as a police investigator working for the prosecution[.]" United States v. Denunzio, 123 F. Supp. 3d 135, 145 (D. Mass. 2015) (internal quotation marks and citations omitted).

Here, the Government takes an extremely narrow view of the First Circuit's "working with the prosecution" standard. The PRPB initially responded to the scene of the alleged crime, secured the area, collected crucial evidence at the house and in the Kia Soul, and turned said evidence over to ATF at ATF's request. (Docket No. 30 at 13). While PRPB no longer appears to be conducting its own parallel investigation (*see* id.), such substantial early assistance in ATF's investigation warrants a finding that the PRPB is "working with the prosecution" in this case. *See* Rivera-Rodriguez, 617 F.3d at 595. **Therefore, the Government has a duty to obtain, review, and disclose any Brady and Giglio material from relevant PRPB files.** While the Court notes the Government's concerns regarding its ability to obtain files from the PRPB, the Government cannot disregard its constitutional obligations merely because doing so would be difficult. Further, the Court notes that the Government has long had a Memorandum of Understanding with the

Commonwealth of Puerto Rico, and such cooperation is not novel or impossibly complicated.[4]

### D. Timing of Disclosures

Next, Defendant seeks to impose the ABA's disclosure standards on the Government. (Docket Nos. 23 at 6; 36 at 7). While Defendant may find it "concerning" that the Government opposes following such ABA Standards (Docket No. 36 at 7), the Supreme Court has clearly stated that "Brady requires less of the prosecution than the ABA Standards for Criminal Justice." Kyles, 514 U.S. at 437. The Court is confident that the Government understands the rules concerning timely disclosure of Brady material, and the Government has assured the Court it "is aware of such obligations and intends to comply with them." (Docket No. 30 at 15).

Defendant also requests a Court order mandating the pre-trial disclosure of Jencks Act material. (Docket No. 23 at 6). However, such an order would run afoul of First Circuit precedent. *See* Grandmont, 680 F.2d at 874 ("A court may not compel the disclosure of statements of Government witnesses before the conclusion of their direct testimony."). Nonetheless, the Government has offered

---

[4] To the extent this Memorandum of Understanding requires or facilitates the disclosure of certain documents between the PRPB and the Government, that further supports the conclusion that PRPB files are within the possession of the Government. *See* Ellison, 527 F. Supp. 3d at 166 ("Sometimes, the government may have possession, custody, or control over documents pursuant to an agreement.").

to disclose any remaining Jencks Act material to Defendant three days before trial. (Docket No. 30 at 16).

Defendant's request for the early disclosure of Brady and Jencks Act materials is **DENIED**.

### E. Request for a List and Summary of All Government Materials

Finally, without citation to any authority, Defendant wants the Government to "[d]isclose a list of all materials not disclosed with a summary of their contents." (Docket Nos. 23 at 7; 36 at 7). However, the Supreme Court has made clear that "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one[.]" Weatherford, 429 U.S. at 559. And the Court has "never held that the Constitution demands an open file policy[.]" Kyles, 514 U.S. at 437. In the absence of any authority supporting such a broad disclosure request, the Court will not require the Government to compile and catalog its materials in such a manner. This request is likewise **DENIED**.

### III.    CONCLUSION

For the foregoing reasons, Defendant's *Motion to Compel Discovery* at Docket No. 23 is **GRANTED IN PART AND DENIED IN PART**.

The Government is ordered to search for and produce all Brady and Giglio material in: (1) the U.S. Probation Office files created on or after April 23, 2021 that were used to prepare the Informative Motion at Docket No. 52 in Criminal Case No. 14-224; and (2) the PRPB files collected during the PRPB's investigation

of the events underlying this case. The Government shall also disclose any information found through this process pursuant to any other mandatory disclosure obligation.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of April 2022.

S/ RAÚL M. ARIAS-MARXUACH<br>
United States District Judge